IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON ROMAN | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO.  07-CV-1201 |
| CUMBERLAND MUTUAL FIRE | : | |
| INSURANCE COMPANY, ET AL. | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM OPINION & ORDER**

GOLDEN, J.                                                                                      NOVEMBER 14, 2007

Before the Court is defendants' motion to dismiss certain claims in plaintiff's Amended

Complaint.  For the reasons that follow, the Court will grant the motion in part and deny the

motion in part.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) allows courts to screen out cases "where a

complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim

which the plaintiff is without right or power to assert and for which no relief could possibly be

granted." Port Auth. v. Arcadian Corp., 189 F.3d 305, 311-12 (3d Cir. 1999).  The Third Circuit

Court of Appeals instructs that "the complaint will withstand a Fed. R. Civ. P. 12(b)(6) attack if

the material facts as alleged, in addition to inferences drawn from those allegations, provide a

basis for recovery." Menkowitz v. Pottstown Mem'l Med. Ctr., 154 F.3d 113, 124-25 (3d Cir.

1998).  In deciding a motion to dismiss, a court is required to accept all of the plaintiff's factual

allegations as true. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  Thus, a court should

grant a motion to dismiss only when it is "beyond doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief." Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980).  In resolving a motion to dismiss, the court must primarily consider the allegations contained in the complaint, although matters of public record, orders, and exhibits attached to the complaint may also be considered.  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1993).

Additionally, because plaintiff is proceeding *pro se*, the Court "must liberally construe his pleadings, and...apply the applicable law, irrespective of whether the [plaintiff] has mentioned it by name." Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003) (internal citations omitted).

## BACKGROUND

In January 2007, approximately one foot of sewage backed up into plaintiff's basement and damaged his personal property.  Plaintiff filed an insurance claim with defendants, and at their suggestion he retained a professional service to clean his basement.  In the process of cleaning, the service placed plaintiff's belongings under plastic tarps in his yard and in two rented trucks parked on his property.

The parties now disagree over (1) whose responsibility it is to inventory the personal property; (2) whether plaintiff's insurance policy covers the property; and (3) the value of the property.  Plaintiff alleges that the sewage backup destroyed between $150,000 and $175,000 of personal property, while defendants approximate the loss at $3,000.  Plaintiff also claims that, due to defendants' failure to take prompt action, sewage remained in his basement longer than was necessary, allowing noxious fumes to drift into the upstairs living area.  The fumes allegedly caused plaintiff's family members to develop migraine headaches and dizziness.  Plaintiff claims that additional professional cleanup is required to rid the basement of its taint, and that

defendants have not investigated the thoroughness of the original cleaning.

In a February 2007 letter to plaintiff, defendants' claims adjuster asserted that eighty percent of the items removed from plaintiff's basement were business-related and therefore not covered under plaintiff's homeowner's policy, and advised plaintiff of the penalties for insurance fraud.  Around the same time, plaintiff allegedly learned that defendants' claim adjuster had a history of "lowballing insurance payments" and receiving kickbacks from the restoration companies to which he referred claimants.  See Am. Compl. at ¶ 37.  Plaintiff reported defendants' adjuster to the Pennsylvania Insurance Commissioner and to defendants' C.E.O. Defendants' attorney then sent plaintiff a letter requesting that he testify under oath concerning his losses, and asked that plaintiff provide significant personal financial documents in order to facilitate the administration of his claim.  At present, plaintiff has not paid the cleaning service, defendants have not paid plaintiff's claim, and plaintiff continues to store his personal property at his cost.

At the end of February 2007, plaintiff filed a Complaint in the Lehigh County Court of Common Pleas alleging breach of contract, bad faith insurance practices in violation of 42 Pa. Cons. Stat. Ann. § 8371, violations of Pennsylvania's consumer protection statute, 73 Pa. Stat. § 201-1, *et seq.*, defamation, and intentional infliction of emotional distress.  Defendants removed the matter on diversity grounds and now seek to dismiss the consumer protection, defamation, and emotional distress claims.[1]  They also seek dismissal of Paragraph 51 of plaintiff's Amended Complaint, and of "The Cumberland Insurance Group" as a named defendant.

---

[1] In response to the motion, plaintiff has withdrawn his emotional distress claim, and the Court will deny that portion of defendants' motion as moot.

## ANALYSIS

**1.     Consumer Protection Claim**

Defendants argue that their alleged failure to render payment on plaintiff's claim is nonfeasance, which is not actionable because the Pennsylvania consumer protection statute only covers misfeasance.  See, e.g., Lombardo v. State Farm Mut. Auto. Ins. Co., 800 F. Supp. 208, 213 (E.D. Pa. 1992) (*citing* Gordon v. Pennsylvania Blue Shield, 548 A.2d 600, 604 (Pa. Super. Ct. 1988)).  In order to state a claim for misfeasance, a plaintiff must allege improper performance, not lack of performance altogether.  Gordon, 548 A.2d at 604 (internal citations omitted).

The distinction between misfeasance and nonfeasance can be fleeting to even the trained legal mind, and it is not for this Court to hold plaintiff to such intricacies.  His Amended Complaint alleges, in essence, that he is unhappy with the way defendants handled his claim. Plaintiff's opposition asserts that his allegations go beyond mere failure to perform.  The Court will not require a *pro se* plaintiff to delineate whether his dissatisfaction arises from defendants' failure to perform, the method in which defendants performed, or both.  See, e.g., Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (stating obligation to liberally construe *pro se* claimant's pleadings).  The Court will therefore decline to dismiss plaintiff's consumer protection claim for failure to plead misfeasance.

Defendants also argue that plaintiff has not plead the elements of common law fraud, as a consumer protection claim requires.  See, e.g., Booze v. Allstate Ins. Co., 750 A.2d 877, 880 (Pa. Super. Ct. 2000).  The elements of common law fraud in Pennsylvania are (1) a material factual misrepresentation; (2) scienter; (3) intention to induce action; (4) justifiable reliance on the

misrepresentation; and (5) damages.  Id.

The Court here reiterates that plaintiff is *pro se* and therefore not held to the same pleading standard as a counseled party.  Higgins, 293 F.3d at 688.  Plaintiff's Amended Complaint alleges that defendants deceived plaintiff "by selling the Plaintiff a policy of insurance and then failing to make a payment of insurance proceeds when the Plaintiff filed a claim."  Am. Compl. at ¶ 47.  The Court reads this allegation to assert that defendants knowingly made a material factual misrepresentation with the intention to induce reliance because it implies that plaintiff purchased the insurance policy under the impression that defendants would make payment on a claim, when in fact defendants did not intend to make payment.  As to reliance, plaintiff's purchase of insurance based upon the belief that the insurer would provide coverage in the event of a loss is a reasonable action.  Plaintiff also alleges damages in the form of the ruined personal property, for which he has yet to be reimbursed.  It thus appears that, under a liberal construction of plaintiff's Amended Complaint, plaintiff has plead the elements of common law fraud and his consumer protection claim survives defendants' motion.

### 2.    Defamation

Plaintiff alleges that defendants' February 2007 letter advising him of the penalties for insurance fraud constitutes defamation.  In Pennsylvania, defamation requires a plaintiff to demonstrate (1) the defamatory character of the statement; (2) the defendant's publication of the statement; (3) application of the statement to the plaintiff; (4) the recipient of the statement's understanding of its defamatory meaning; (5) the recipient's understanding that the declarant intended the statement to apply to the plaintiff; (6) special harm resulting from the statement; and, if applicable (7) abuse of a conditional privilege.  42 Pa. Cons. Stat. Ann. § 8343(a); Beverly

Enters., Inc. v. Trump, 182 F.3d 183, 187 (3d Cir. 1999).  Defendants argue that plaintiff has not

plead the necessary elements of defamation, although they do not specify which elements are

missing.

Plaintiff's allegations plainly satisfy some of the defamation elements.  Defendants'

attorney made reference to the letter from defendants' claims adjuster advising him of the

penalties for insurance fraud, thereby demonstrating publication, as well as showing that the

recipient of the statement – in this case the attorney – understood that the statement applied to the

plaintiff, and that the defendants' adjuster intended the statement to apply to the plaintiff.

The presence of the other defamation elements is less clear.  It "is the court's duty to

determine if the publication is capable of the defamatory meaning ascribed to it by the party

bringing suit."  MacElree v. Philadelphia Newspapers, Inc., 674 A.2d 1050, 1053 (Pa. 1996).  A

statement is defamatory if it tends "to harm the reputation of another as to lower him in the

estimation of the community or deter third persons from associating or dealing with him."

Thomas Merton Ctr. v. Rockwell Int'l Corp., 442 A.2d 213, 215 (Pa. 1981).

Publication of a defamatory statement may nonetheless be permissible "if the publication

was made subject to a privilege, and the privilege was not abused."  Chicarella v. Passant, 494

A.2d 1109, 1112-13 (Pa. Super. Ct. 1985).  Privileged communications for the purposes of a

defamation action are those "made on a proper occasion, from a proper motive, in a proper

manner, and based upon reasonable cause."  Id. at 1113 (internal citations omitted).  Occasions

"giving rise to conditional privileges are:  (1) when some interest of the publisher of the

defamatory matter is involved; (2) when some interest of the recipient of the matter, or a third

party is involved; or (3) when a recognized interest of the public is involved."  Beckman v.

6

Dunn, 419 A.2d 583, 587 (Pa. Super. Ct. 1980).  Abuse of a conditional privilege results from publication:  (1) driven by malice or negligence; (2) for a purpose other than that for which the privilege is given; (3) to a person not reasonably believed to be necessary to accomplishing the purpose of the privilege; or (4) including defamatory content not reasonably believed to be necessary to accomplish the purpose.  Id. at 588.

The Court will first examine whether defendants' statement is capable of a defamatory meaning.  The Pennsylvania Superior Court considered a similar case in Elia v. Erie Ins. Exch., 634 A.2d 657 (Pa. Super. Ct. 1993).  There, plaintiff brought a defamation suit against his insurance company after the company's independent medical examiner filed a report suggesting that plaintiff was exaggerating his disability.  Id. at 659.  Here, the gravamen of plaintiff's claim is that defendants implied he was committing insurance fraud when they advised him of its penalties.  Unlike Elia, plaintiff does not claim that the defendants' actually accused him of committing insurance fraud, thereby making the statement in question less susceptible to a defamatory meaning.  Nonetheless, the Court finds defendants' implications clear, and because this issue arises on a Rule 12(b)(6) motion against a *pro se* plaintiff, the Court will assume that plaintiff has identified a statement capable of a defamatory meaning and move to consideration of the remaining elements of his claim.

As stated above, a conditional privilege may arise when the content of the defamatory statement is of interest to the publisher, the recipient or the public.  Beckman, 419 A.2d at 587.  Pennsylvania courts recognize that "the Commonwealth, insurance carriers, and insureds all have an interest in precluding payments on illegitimate or fraudulent claims."  Elia, 634 A.2d at 661.  By advising plaintiff of the penalties for insurance fraud, it appears defendants were attempting

to vindicate their interests as the publisher insurance carrier, and the interests of the public, in preventing payment of fraudulent insurance claims.  The statement is in the interest of the plaintiff as well, insofar as it can be assumed that the plaintiff wishes to avoid incurring punishment for insurance fraud.  It thus appears that defendants' statement was occasioned by a conditional privilege because it was consistent with recognized interests of the appropriate parties.

There is also no evidence that defendants abused their conditional privilege.  Plaintiff claims that defendants' statement is malicious because it implies criminal conduct on his part.  Even assuming plaintiff's characterization is accurate, the record does not support this assertion.  The defendants' letter neither articulates why it is advising plaintiff of the penalties for insurance fraud, nor explicitly accuses plaintiff of committing insurance fraud.  It merely informs plaintiff of the penalties without stating the reasons for doing so.

Similarly, there is no evidence that defendants inappropriately broadcast the defamatory statement.  In Elia, the defendant published its defamatory statement to the claims adjuster administering plaintiff's claim, and the court found "nothing in the record to demonstrate that the report was circulated to anyone other than those necessary to ascertain the validity of [plaintiff's] claim."  Id.  The situation here is analogous.  Shortly before publication of the statement at issue, plaintiff had reported defendants' adjuster to the Pennsylvania Insurance Commission.  Plaintiff having raised the prospect of legal proceedings, it is natural that defendants would have consulted their attorney.  Subsequently informing that attorney of the events leading up to his contact is a similarly reasonable practice because such information was necessary for the attorney to perform his job.  The Court therefore finds no inappropriate circulation.

8

The publication of the statement is also consistent with the purpose of the privilege under which it was given.  Defendants' conditional privilege here arises from the defendants' and the public's interest in preventing insurance fraud, and the plaintiff's assumed interest in avoiding punishment for insurance fraud.  The allegedly defamatory statement simply identifies the penalties for insurance fraud without delving into the reasons for such fraud, or even the likelihood that fraud is occurring.  The statement is thus tailored to the interests by which it was occasioned.

Finally, defendants' letter does not go beyond the scope of the conditional privilege.  It does not state that plaintiff has committed insurance fraud, nor that he intended to.  It merely provides the penalties for violation of a statute that is relevant to the dispute at issue.  It does not reference the penalties for violations of other statutes, and it does not venture into unnecessary speculation.

The Court therefore finds that, although plaintiff has alleged a potentially defamatory statement that defendants published and that the statement's recipients understood to apply to the plaintiff, the statement is insufficient to support a claim for defamation because it was made within the confines of a conditional privilege that the defendants did not abuse.[2]  The Court is mindful of its obligation to liberally construe plaintiff's allegations, Higgins, 293 F.3d at 688, but can identify no basis in the pleadings for allowing this claim to proceed.  The Court will, however, grant plaintiff leave to file a Second Amended Complaint if he wishes.

---

[2] Defamation actions also require special harm, or "actual and concrete damages capable of being estimated in money, established by specific instances such as actual loss due to withdrawal of trade of particular customers, or actual loss due to refusal of credit by specific persons, all expressed in figures."  Beverly Enters., Inc., 182 F.3d at 188 (internal citations omitted).  As the Court will dismiss this claim because defendants have not abused their conditional privilege, it is unnecessary to analyze whether plaintiff has plead special damages.

### 3.     Paragraph 51 of the Amended Complaint

Plaintiff's Amended Complaint "expressly reserves the right to file a separate civil rights action against the Defendants in federal court." Am. Compl. at ¶ 51.  Plaintiff having originally filed his Complaint in the Lehigh County Court of Common Pleas, this paragraph is apparently an attempt to preserve plaintiff's ability to file a civil rights lawsuit against defendants in a federal forum.  Defendants argue that such action would constitute impermissible "claims splitting" in contravention of long-established precedent.  See, e.g., In re Wallace's Estate, 174 A. 397, 400 (Pa. 1934) (holding that "plaintiffs are not at liberty to prosecute their rights piecemeal by presenting part of the available grounds and reserving other parts for another suit if the first fails.").  In response, plaintiff has withdrawn Paragraph 51 in favor of prosecuting his civil rights claim as part of this lawsuit, rendering defendant's motion to dismiss the paragraph moot.

As to the validity of a civil rights action for discrimination, however, the Court discerns no cognizable claim because defendants are not state actors and therefore not subject to the Fourteenth Amendment to the Constitution.  See, e.g., 42 U.S.C. § 1983 (providing a remedy only for actions taken "under color of any statute, ordinance, regulation, custom, or usage").  A Title VII claim would fail as well because defendants do not employ plaintiff.  See, e.g., 42 U.S.C. § 2000e-2 (outlawing employment practices *by employers*).  Plaintiff is therefore put on notice that the Court can locate no civil rights claim in his Amended Complaint, even under the liberal pleading standard to which he is held as a *pro se* litigant.  The Court will consider plaintiff's discrimination allegations insofar as they support his other causes of action, but plaintiff will need to amend his Complaint if he wishes to proceed with a discrimination claim.

4.        **The Cumberland Insurance Group**

Plaintiff's Amended Complaint names "The Cumberland Insurance Group" as a co-defendant.  Defendant Cumberland Mutual Fire Insurance Company argues that The Cumberland Insurance Group is merely a trademark signifying an association of entities under the Cumberland corporate umbrella, and attaches documents purporting to show the same.  Plaintiff disputes this contention, providing documentation that The Cumberland Insurance Group is the issuer of his policy.

Because this dispute is before the Court on a Rule 12(b)(6) motion, plaintiff's contention that The Cumberland Insurance Group is a separate legal entity will be taken as true and defendants' motion will be denied.  At this early stage in the litigation, plaintiff has no knowledge beyond defendants' assertions that The Cumberland Insurance Group is only a trademark.[3]  Moreover, other courts have recognized that use of a trade name with respect to a corporation is nothing more than descriptive of the corporation.  See, e.g., Snowden v. Checkpoint Check Cashing, 290 F.3d 631, 634 n.2 (4th Cir. 2002) (citing cases). This ruling does not prejudice defendants because the filing of a motion to dismiss suggests that, whatever its proper designation, Cumberland is aware of this lawsuit.  The Court will also grant leave to renew the motion to dismiss The Cumberland Insurance Group in the form of a motion for summary judgment.

An appropriate Order accompanies this Memorandum Opinion.

---

[3] If this Court were to consider the contents of defendants' attachments in connection with defendants' Rule 12(b)(6) motion, it would arguably become necessary to convert the motion to a motion for summary judgment under Federal Rule of Civil Procedure 56.  See Rose v. Bartle, 871 F.2d 331, 339 n.3 (3d Cir. 1988).  The Court will not take this approach because declining to address summary judgment now will allow the parties to file motions for summary judgment without prejudice after the record has more fully been developed.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON ROMAN | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO.  07-CV-1201 |
| CUMBERLAND INSURANCE | : | |
| GROUP | : | |
| | : | |
| Defendant | : | |

## **ORDER**

AND NOW, this 14th day of November, 2007, after review of defendants' motion to dismiss (Document No. 18) and plaintiff's response thereto, it is hereby ORDERED that:

1.    Defendants' motion to dismiss plaintiff's Pennsylvania Unfair Trade Practices and Consumer Protection Law claim, contained in Paragraph 47 of plaintiff's Amended Complaint, is DENIED;

2.    Plaintiff having withdrawn the claim, defendants' motion to dismiss plaintiff's claim for damages arising from emotional distress, contained in Paragraph 49 of plaintiff's Amended Complaint, is DENIED as moot;

3.    Defendants' motion to dismiss plaintiff's claim for defamation, contained in Paragraph 48 of plaintiff's Amended Complaint, is GRANTED;

4.    Plaintiff having withdrawn the paragraph, defendants' motion to dismiss Paragraph 51 of plaintiff's Amended Complaint is DENIED as moot; and

5.    Defendants' motion to dismiss "The Cumberland Insurance Group" as a defendant is DENIED with leave to renew in the form of a motion for summary judgement.

IT IS FURTHER ORDERED that:

1.      If he so chooses, plaintiff shall have ten days from the date of this Order to file a

Second Amended Complaint to correct the deficiencies identified in the accompanying

Memorandum Opinion; and

2.      Defendants shall file an Answer within ten days of the date plaintiff files a Second

Amended Complaint.


                                        BY THE COURT:


                                        /s/ Thomas M. Golden
                                        THOMAS M. GOLDEN, J.

2